**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**KIERRE T. RIMMER**                                                              **PLAINTIFF**

v.                                                                                        **CASE NO. 2:11CV256-B-A**

**THE CLEVELAND STATE BANK**                                           **DEFENDANT**

## MEMORANDUM OPINION

Presently before the court is Defendant Cleveland State Bank's motion for summary judgment **[40]**. Upon due consideration of the parties' filings and supporting and opposing authority, the court is ready to rule.

Kierre Rimmer was hired as a teller by The Cleveland State Bank on June 7, 2010, after interviewing with George Steen, bank president, and Brian Bishop, a bank vice-president. Rimmer, an African-American male, worked at the bank's drive-thru window along with two other full-time tellers, Rebekah Robinson and Lei-Anne Vestal, both white females. All three tellers were directly supervised by Anita Sauerwein, a white female. Over his nine month tenure, Rimmer overdrafted his personal account with the bank on 61 occasions, in violation of bank policy for employees. For the months of January and February, 2011, Rimmer's drawer shortages totaled $2,226.65.

On February 23, 2011, it was determined that $2,000.00 in the form of twenty $100 bills was missing from the vault of the bank's drive-thru. The three full-time tellers were the only employees with access to the vault on the date of the loss. All tellers' personal accounts were inspected for suspicious activity. Rimmer's personal account revealed that on March 7, 2011, he deposited $1,870.00 in the form of eighteen $100 bills, three $20 bills, and one $10 bill. He then

wrote a check for $2,000.00. Bishop considered this activity to be suspicious since it transpired after the vault shortage.

On March 31, 2011, Bishop and other bank officers met with Rimmer to discuss the suspicious transaction as well as his issues with overdrafts and drawer shortages. When Bishop inquired as to the source of Rimmer's funds for the $1,870.00 transaction, Rimmer stated the money must have been obtained from his tax refund, but Bishop pointed out to him a separate transaction in Rimmer's account which deposited the tax refund. Rimmer then speculated that the money was the proceeds of a t-shirt business Rimmer owned along with his wife. At the conclusion of this meeting, Bishop informed Rimmer not to return to work because the bank had lost confidence in his trustworthiness and ability to perform his job satisfactorily.

Rimmer immediately discussed the termination with his wife who reminded him that he sold a vehicle for $2,700.00 on March 4, 2011. When Rimmer turned in his bank keys to Sauerwein, he informed her of the vehicle sale and subsequent deposit. Sauerwein told Rimmer he could report this information to Bishop, but Rimmer declined.

Rimmer filed the instant action alleging claims of race and gender discrimination in violation of Title VII. Title VII prohibits an employer from "discharg[ing] an individual, or otherwise discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Defendant Cleveland Bank subsequently filed this motion for summary judgment, arguing that Rimmer cannot establish a *prima facie* case for either race or gender discrimination.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). In reviewing the evidence, this court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed.2d 105 (2000). In so doing, the court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S. Ct. at 2110.

Claims of racial and gender discrimination are governed by the evidentiary standard adopted in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff has the initial burden of making a *prima facie* case. *Id*. at 802. Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the employment decision. *Id*. at 802-03. If the defendant is able to articulate a legitimate reason for its action the ultimate burden rests on the plaintiff to prove the employment decision was the result of a discriminatory practice. *Id*. at 804.

A plaintiff may make a *prima facie* case for racial or gender discrimination by showing that: (1) he is a member of a protected class; (2) he was qualified for the position in question;

(3) he suffered some adverse employment action; and, (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 258 (5th Cir. 2009). Employment actions are "taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor . . . and have essentially comparable violation histories." *Id*. at 260 (citations omitted).

There is no dispute that Rimmer meets the first three prongs of a *prima facie* case in that he is a black male who worked in an office consisting of all white females, he was qualified to be a bank teller, and his employment was terminated. Defendant argues that Rimmer cannot identify a similarly situated individual who was treated more favorably since the other employees who retained their jobs had fewer violations of bank policy and no suspicious account activity.

First, Defendant Cleveland Bank argues that no other full-time teller overdrafted a comparable number of times as Rimmer. As previously stated, the bank recorded 61 overdrafts on Rimmer's personal account. The bank recorded 24 overdrafts for Robinson, and no overdrafts for Vestal. While "[e]ach employee's track record at the [bank] need not comprise the identical number of identical infractions . . . these records must be comparable." *Id*. at 261. The court finds that Rimmer's 61 overdrafts are not comparable in number to the overdrafts by any other employee holding his same position at the bank.

Next, Defendant contends that no other full-time teller recorded drawer losses as substantial as Rimmer's. On February 2, 2011, Rimmer's teller drawer was short $1,988.84. On March 1, 2011, Sauerwein gave each teller a memo regarding outages for the months of January

and February in 2011. Rimmer's drawer shortages totaled $2,226.65. Robinson's drawer was short $313.00, while Vestal had no recorded shortages. Given the large discrepancy between Rimmer and the other tellers' shortage totals, the court finds that Rimmer cannot show a comparator with regards to drawer shortages.

Finally, Defendant argues that no other employee had suspicious account activity. Rimmer counters that a deposit of $1,870.00 three days after he sold a vehicle for $2,700.00 is hardly suspicious. However, the relevant issue is whether Rimmer and "his alleged comparator employees were similarly situated from the perspective of their employer at the time of the relevant employment decisions." *Perez v. Texas Dept. of Criminal Justice, Inst. Div.*, 395 F.3d 206, 210 (5th Cir. 2004) (citations omitted). No person involved in terminating Rimmer had knowledge of the sale of the vehicle at the time of the decision. The fact that Rimmer has produced evidence after the fact purporting to show that the so-called suspicious deposit was the result of an honest transaction is irrelevant, as the focus is on the employer's rationale at the time of the decision. *Id*. (citing *Sabree v. United Bhd. of Carpenters & Joiners Local No. 33*, 921 F.2d 396, 404 (1st Cir. 1990). At the time Bishop decided to terminate Rimmer, Rimmer's account activity seemed reasonably suspicious and no other teller had similar activity.

Based on these reasons, Rimmer has failed to produce evidence that the bank treated him more harshly than similarly situated white female employees. The differences between Rimmer and the other tellers' histories at the bank more than account for the differential treatment they received. Thus, Rimmer has not established a *prima facie* case for either race or gender discrimination.

Additionally, Defendant is arguably entitled to a same-actor presumption. Bishop, a bank vice-president, interviewed Rimmer and had a role in deciding to hire Rimmer as a teller, also terminated him. *See Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 546 (5th Cir. 1996). While the presumption is not determinative on the issue of whether discrimination occurred in Rimmer's termination, when considering the evidence as a whole, it appears to the court that Bishop terminated Rimmer based on his infractions and perceived suspicious activity, not due to race or gender.

For the foregoing reasons, the court finds that the defendant is entitled to summary judgment on all claims. A separate order in accord with this opinion will issue this day.

This, the 15th day of May, 2013.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**